UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| James Clinton Davis, | ) | Civil Action No. 4:03-3546-RBH-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | REPORT AND RECOMMENDATION |
| | ) | |
| Honda of South Carolina | ) | |
| Manufacturing, Inc., | ) | |
| | ) | |

Plaintiff, proceeding *in forma pauperis* and *pro se*, filed this action on November 11, 2003.

In the Statement of Claim portion of the form complaint, plaintiff sets forth as follows:

> In November, 2002, I became ill. I went to my doctor. I had the flu. I was put on medication. Dr. Hoppla filled out my F.M.L.A. forms. I took the forms to Human Resources at Honda. I received a letter, in the mail from Honda stating my F.M.L.A. was denied. I reported to human resources, at Honda Sharon, tell me, my doctor filled the forms out incorrectly. I'm given another form, for F.M.L.A. for my doctor to fill out. Dr. Hoppla fills out the form, and I turned it into human resources at Honda. Five days later, I called to human resources. I'm told, by Sharon, the forms were filled out incorrectly again. The four days I was out sick counted against me. I now have 8 points. In February, 2003, I wake up, all up-set. I didn't know what was wrong. I called my supervisor, Brad Smith, at work. I broke down, talking to him, on the phone. Brad informs to report to human resources and explain what's going on. I report to John Black, who works in human resources. John and I sit in a room, secluded from everyone else. John calls the Associate Assistance Program, for me. I talk to a John Arnold. I'm given the name of a councelor, in Florence, Mrs. Christine Tuck. Mr. Black tell's me to go home, and relax, that Honda would take care of everything. The next day, I went to my doctor, Mrs. Jackson. My doctor tells me, I have mental depression. I'm put on medication, and seeing a councelor. My doctor fill out my F.M.L.A. forms. In March, 2003, I return to my doctor. I tell her how I'm feeling, and my medication is boosted up. In April, 2003, I return to my doctor. My medication is again boosted up. Human resources call's me to the office, I'm told by Leonard Lowery, my doctor filled out the forms wrong again. I asked "why did you wait so long to tell me?" Leonard said, "They," human resources, "did not know how to get in touch with me."

-1-

> I worked in the same department, and lived at the same address. Human resources found me in November. I didn't understand. My F.M.L.A. was again denied, for the same reason. I was let go, because of my attendance.

The most recent scheduling order in this action was filed on January 24, 2005, which allowed until March 14, 2005, to complete discovery and set a deadline for March 31, 2005, to file all motions, except those to complete discovery, nonwaivable motions under Rule 12, and those relating to the admissibility of evidence at trial.

This matter is now before the court on defendant's motion for summary judgment filed April 6, 2005 (Document # 122). [1] Because the plaintiff is proceeding *pro se*, he was advised on or about April 11, 2005,[2] pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to adequately respond[3] to the defendants' motion for summary judgment could result in dismissal of their case. The plaintiff responded.

**Facts**

Defendant, Honda of South Carolina Manufacturing, Inc., is a South Carolina corporation incorporated in 1997, and has a manufacturing facility in Timmonsville, South Carolina which employs over 1800 employees.

---

[1] Upon motion of defendant, it was granted an extension of time to file this motion.

[2] The return receipt indicates plaintiff received the Roseboro order on April 11, 2005. See Document # 140).

[3] The order states that failure "to respond adequately, the motion may be granted, thereby ending the case. Careful attention should be given to the requirements of Rule 56(e) concerning the necessity for affidavits . . . to be based upon personal knowledge, to contain facts admissible in evidence, and to be executed by a person who would be competent to testify as to matter contained in the affidavit if he or she was called to the witness stand . . . . submission of a brief . . . will not be sufficient alone to withstand a properly supported motion for summary judgment."

Plaintiff was hired by defendant on May 8, 2000. Plaintiff was assigned to the Plastics Department throughout his employment. His direct supervisor was Brad Smith. Plaintiff's employment with defendant ended on May 7, 2003.

Defendant has an attendance policy that requires employees to be present, unless excused. An employee is assessed a certain number of points for unexcused absences from work. If an employee accumulates 12 points for attendance violations, the employee is subject to being separated from employment.(Aff. of Jeff Helton ¶2). As Exhibits 2, 3, and 4 to Exhibit F to defendant's motion, defendant presents counseling forms from the years 2000, 2001, and 2002, respectively, indicating a significant number of unexcused absences for which he was informed that further violation could result in termination.

Exhibit 6 to Exhibit F to defendant's motion is a Computation of Attendance Points. The form indicates that an employee receives ½ point reduction each month and 2 points added for each absence. The form indicates that it was a final counseling and plaintiff had a total of 6 points on the date of the final counseling, October 3, 2002. Exhibit 7 to Exhibit F indicates plaintiff had 10 points as of January 8, 2003. Plaintiff was absent on a few days in February 2003, and again from April 15, 2003, through April 24, 2003. The medical record from McLeod Family Practice located at Exhibit D to defendant's motion[4] provides as follows:

> 5-1-03   pt. sent note to Dr. Jackson wanting another FMLA form filled out for 4-15-03 until 4-24-03 - Dr. Jackson will only give excuse for 4-22-03. Pt was not taken out of work. Pt stated he would be fired if he did not get that - Informed him we do not make false statements on documents & we were

---

[4] The medical record was also submitted by plaintiff with his letter filed January 30, 2004.

sorry we could not help him.[5]

Plaintiff submitted a statement to the Unemployment Insurance Division of the South Carolina Employment Security Commission dated May 13, 2003, in which he describes his discharge as follows:

> I was discharged on 05-01-03 because of attendance. In February I was sick four days and had my doctor sign the Family Medical Leave Act forms for 02-06-03 to 02-10-03. In April Leonard Lowery, Human Resource Coordinator, informed me that the FMLA papers were not filled out accurately. Leonard informed me to stay out of work until my doctor completed the FMLA paperwork for the second time. My doctor refused to fill out the paperwork a second time, she said it would be falsifying records. On 04-04-03 I left a message on Jeff Hilton's, plant manager's, voice mail and told him I needed to talk to him about my job since my doctor refused to fill out the forms. Jeff Hilton, plant manager returned my call on 04-08-03 and told me that Human Resources did not have any authority to keep me out of work waiting for a form to be signed by my doctor. I went back to work immediately. On 4-10-03 Leonard Lowery, HR Coordinator, called me into his office and had a computer printout sheet of my attendance and showed me the four days I was out in February had medical leave by every date. He informed me that it was a computer misprint and that it should indicate absence instead of medical leave next to those four days. Placing me at 10 points out of 12 on Honda's point system. Leonard Lowery still kept insisting that my doctor needed to fill the FMLA form out. I called the doctor the next day, 04-11-03, and she said that she could not falsify documentation by filling out the forms again. I called Leonard and told him that my doctor was still refusing to refill the paperwork out. Leonard told me without the paperwork I would be over my 12 points and that it would be grounds for automatic termination. On 05-01-03 Leonard Lowery told me to come in so we could discuss the situation and review the circumstances. I did not see the point of returning since I had already exceeded the 12 point attendance policy.

---

[5] In December 2002, plaintiff filed for FMLA leave for a "persistent cough." He also filed for FMLA leave for a period beginning February 4, 2003, for depression with anxiety. Defendant did not give him credit for FMLA leave for the December absences, but did not count the February period against him for purposes of attendance points. See Exhibit 9 & 10 to defendant's motion.

Plaintiff has filed many documents in this case. He submitted a plethora of letters. He also filed statements, referred to as affidavits. He submitted a statement on or about April 21, 2005 (Document # 129) in opposition to defendant's motion for summary judgment. In the statement, he asserts that on or about February 2, 2003, he called Brad Smith and explained that he was having problems, was upset and crying. Mr. Smith advised him to come in and talk with someone in Human Resources. Personnel in Human Resources set up an appointment with a counselor at the Counseling Center. Personnel at defendant told him to go home for the day and relax. He attended his appointment with his doctor at McLeod Family Practice on February 4, 2003. He gave his physician, Dr. Jackson, a FMLA form to complete. A follow-up appointment was scheduled for February 14, 2003. Dr. Jackson gave him the FMLA form and told him he could return to work. However, he was out for approximately nine (9) days. He returned to Dr. Jackson in March, and did not miss any work between February 15, 2003, and April 2003. In April, Leonard Lowery informed plaintiff that his doctor did not fill out the FMLA form correctly in February 2003,[6] and would have to fill out another form. He told him that if the doctor fills out the form correctly, he could return to work, but if the doctor did not fill out the form correctly, he could not return to work. He took the FMLA form to his doctor with a note explaining the situation and left a message for him to return his call. He tried to contact Jeff Helton, the plant manager, to inform him of his situation. Mr. Helton called him back about four or five days later. Mr. Helton told him to return to work which he did. He received a letter from his doctor stating he was not excused from work in April and they could not falsify documents. The same day he received the letter from his doctor, he was asked to report to Mr.

---

[6] In his statement filed April 15, 2005, plaintiff states that defendant indicated that the form was "missing information, condition not serious enough," etc. (Document # 126).

-5-

Lowery who told him he needed the new FMLA form. Plaintiff told Mr. Lowery about the letter from his doctor and Mr. Lowery told plaintiff to contact him the following day before he came to work. The next day, plaintiff was unable to contact Mr. Lowery by phone but spoke with Brad Smith. Mr. Smith informed plaintiff that his employment had been terminated for attendance problems. Mr. Lowery called him a short while later and asked him to come in. Plaintiff refused to report to defendant's facility because all that was going to happen was his employment was going to be formally terminated. He asserts that defendant claimed in his claim for unemployment benefits that he quit.

Plaintiff also filed a statement on August 3, 2005 (Document # 175). Among other things, he states that he missed the days in April because he was told not to come to work until he obtained the FMLA form from his doctor. During his deposition, he testified that the days he missed in April were the days he was waiting for Mr. Helton to return his call. (Plain. Dep. at 57). He further states that he was not given a "review" before he was terminated, which is required by company policy.

Plaintiff claims that his wrongful termination claim is based on defendant not following procedure. Specifically, he claims that Brad Smith told him he was terminated because he had too many absences, and that Brad Smith did not have the authority to terminate his employment. (Plaint. Dep. at 91-92). He claims that he spoke to Leonard Lowery, who had the authority, on the telephone the same day, and that Mr. Lowery wanted plaintiff to come in so plaintiff could be formally terminated. (Plaint. Dep. at 70-71). When plaintiff did not report to work as requested by Mr. Lowery, Mr. Lowery sent a letter informing him that his employment with defendant was terminated. (Exhibit F ¶5 to defendant's motion).

Plaintiff filed a charge of discrimination on or about June 19, 2003, alleging a violation of

the Americans with Disabilities Act, complaining as follows:

> [Honda] was aware of my medical condition, but failed to provide reasonable accommodation. I did not walk off the job, as alleged, and believe that reason was a pretext to terminate me because of my medical condition.

(Exhibit A to defendant's motion).

### Standard for Summary Judgement

Defendants filed their motion for summary judgment pursuant to Rule 56, FRCP. The moving party bears the burden of showing that summary judgment is proper. Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), FRCP; Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. Celotex, 477 U.S. 317. Once the moving party has brought into question whether there is a genuine issue for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine issue for trial. Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992). The evidence relied on must meet

"the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

Rule 56(e) provides, "when a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." See also Celetex Corp. v. Catrett, 477 U.S. 317, 324 (1986)(Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves"). To raise a genuine issue of material fact, a party may not rest upon the mere allegations or denials of his pleadings. Rather, the party must present evidence supporting his or her position through "depositions, answers to interrogatories, and admissions on file, together with ... affidavits, if any." Celetex Corp. v. Catrett, 477 U.S. 317, 322 (1986). See also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

Since the plaintiff is proceeding pro se, this court is required to treat his filings and pleadings with some degree of liberality. Estelle v. Gamble, 429 U.S. 97 (1976); Hughes v. Rowe, 449 U.S. 9 (1980) (per curiam). However, plaintiff is cautioned that while the mandated liberal construction afforded pro se pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiffs could prevail, it should do so, but that a court may not rewrite pleadings to include claims that were never presented, Barnett v. Hargett, 174 F.3d 1128, 1133 (10th Cir. 1999), or construct plaintiff's legal arguments for him, Small v. Endicott, 998 F.2d 411, 417-418 (7th Cir. 1993), or "conjure up questions never squarely presented" to the court. Beaudett v. City of Hampton,

775 F.2d 1274, 1278 (4th Cir. 1985), cert. denied, 475 U.S. 1088 (1986). Further, while the court should afford a pro se litigant every reasonable opportunity to construct and present a potentially meritorious claim, the court cannot act as counsel for a pro se litigant or excuse a failure to comply with the rules of this court.

**Analysis**

Defendant sets forth that plaintiff asserts causes of action under the ADA, the FMLA, and for wrongful discharge based upon company policy. Suffice it to say that plaintiff has made an inordinate number of filings in this case. Letters to the court have indicated that he desires to withdraw his claim under the Family and Medical Leave Act at times,[7] however, ultimately, he expresses his desire to maintain the cause of action.

**American with Disabilities Act Claim**

To prove a violation of the ADA, a plaintiff must establish that (1) he has a disability; (2) that he is a qualified individual; and (3) that the employer discriminated against him because of his disability. Martinson v. Kinney Shoe Corp., 104 F.3d 683,686 (4th Cir. 1997).

The ADA defines "disability" as a physical or mental impairment that substantially limits one or more of the major life activities of an individual. 42 U.S.C. §12102(2); Haulbrook v. Michelin North America, Inc., 252 F.3d 696, 702-03 (4th Cir. 2001). The date upon which we must consider any "disability" is the date of the adverse employment action. EEOC v. Stowe-Pharr Mills, Inc., 216 F.3d 373, 379 (4th Cir. 2000).

To "substantially limit" a major life activity requires that an impairment significantly restrict

---

[7] In fact, at deposition he testified that he was dropping his FMLA claim because of the unexcused absences in February 2003. (Plaint. Dep. at 90,93).

the ability to perform a major life activity. Halperin, 128 F.3d at 199. We may consider the nature and severity of the impairment, its duration or expected duration, and any permanent or long term impact. Id. (internal citations omitted). A temporary impairment is not sufficient to grasp the protections of the ADA. See Pollard v. High's of Baltimore, Inc., 281 F.3d 462 (4th Cir. 2002); Halperin, 128 F.3d at 199("[T]he term 'disability' does not include temporary medical conditions, even if those conditions require extended leaves of absence from work.")(internal citations omitted). It is plaintiff's burden to set forth sufficient evidence to show his impairment substantially limits a major life activity. Halperin, 128 F.3d at 199. It is not necessarily the name or diagnosis that determines whether or not a person has a disability, but rather the "effect of that impairment on the life of the individual." Sutton, 527 U.S. at 483 (citing 29 C.F.R. pt. 1630, App. §1630.2(j)). Plaintiff fails to present evidence of a physical or mental impairment rising to the level of that contemplated under the ADA, and, additionally, does not indicate how he is substantially limited in any major life activity. See Poindexter v. Atchinson, Topeka, and Sante Fe Ry. Co., 168 F.3d 1228 (10th Cir. 1999)(A plaintiff must articulate with precision the impairment alleged and the major life activity affected by the impairment). Accordingly, defendant's motion for summary judgment against plaintiff's claim under the ADA should be granted.

**Family and Medical Leave Act Claim**

An action for unlawful termination under the Family and Medical Leave Act, 29 U.S.C. §2601, *et seq.*, generally requires proof of five essential elements: (1) plaintiff was an "eligible employee"; (2) defendant was a "covered employer"; (3) plaintiff gave adequate notice of the need for protected leave; (4) the requested leave was for a qualifying reason; and (5) plaintiff was terminated in violation of the Act. Defendant challenges plaintiff's claim under the fourth element.

It asserts that plaintiff fails to establish a "serious health condition" qualifying under the FMLA.

A person has a qualifying reason if he has a "serious health condition" that renders him unable to perform the functions of his position. 29 U.S.C. §2612(a)(1)(D). 29 U.S.C. §2611(11) defines the term "serious health condition," as "an illness, injury, impairment, or physical or mental condition that involves--(A) inpatient care in a hospital, hospice, or residential medical facility; or (B) continuing treatment by a health care provider." 29 C.F.R. §825.114(a) provides:

> (2) Continuing treatment by a health care provider. A serious health condition involving continuing treatment by a health care provider includes any one or more of the following:
> (i) A period of incapacity (i.e., inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefor, or recovery therefrom) of more than three consecutive calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves:
> (A) Treatment two or more times by a health care provider, by a nurse or physician's assistant under direct supervision of a health care provider, or by a provider of health care services (e.g., physical therapist) under orders of, or on referral by, a health care provider; or
> (B) Treatment by a health care provider on at least one occasion which results in a regimen of continuing treatment under the supervision of the health care provider.

Plaintiff's request for leave in December 2002 relating to a persistent cough did not involve in excess of three days. Therefore it does not qualify.[8] The leave request in February 2003 relating to depression and anxiety was not initially counted against plaintiff for purposes of absence computations. In fact, it was designated as medical leave. However, when plaintiff's physician did not provide support via the FMLA leave form, defendant demanded plaintiff obtain the necessary information on the form to account for the absences. Plaintiff testified at deposition as follows:

---

[8] It does not appear that plaintiff addresses this period in his filings. Therefore, any claim under the FMLA based on the December 2002 period is considered abandoned.

> Q: You had ten points we just agreed, right?
> A: Yes, ma'am.
> Q: Before the February absences?
> A: Right.
> Q: Okay. If the February absences had been counted against you, so the FMLA was denied like it was, if these absences had been counted against you, you would have had more than 12 points. You would have at least 12, right?
> A: Yes, ma'am.
> Q: And you would have been at a level for separation in February, right?
> A: Right
> . . .
> Q: Okay. And having said that, though, you understand that the February absences would have already put you at 12 points, but they weren't counted against you; is that right?
> A: Right.
> Q: Okay. So. . .
> A: That is why I asked the courts to drop the FMLA part of the lawsuit.

(Plaint. Dep. at 57,90).

Plaintiff missed additional days from April 15, 2003, through April 24, 2003. In the note regarding plaintiff's FMLA form, his physician stated that "pt was not taken out of work," and indicated false statements would not be provided otherwise.

Accordingly, plaintiff has failed to meet his burden of showing a genuine issue of material fact regarding whether or not he had a "serious health condition" that rendered him unable to perform the functions of his job. The record does not contain evidence of qualifying periods of incapacity. While the record does show plaintiff was absent a sufficient amount of time, it does not contain evidence that a serious health condition rendered him unable to perform the functions of his job on those days. In fact, the medical evidence presented contradicts any such claim, at least as it relates to the April 2003 absences. The FMLA form completed by his physician for the February 2003 absences indicates a depression related condition, but does not indicate a duration that exceeds

three days.  While an issue of fact may exist, *arguendo*, regarding whether or not the leave could qualify as FMLA leave, defendant's demand that plaintiff obtain medical support for his FMLA leave request does not violate the FMLA under the facts presented.

Additionally, plaintiff was absent from work in April 2003 because he could not obtain the necessary note from his physician.  While he claims he could not attend work because his employer would not allow him to return to work until he obtained a FMLA form from his physician validating his absences in February, when he could not do so, defendant terminated his employment.  Whether the time was based on the April period when he did not report to work or the February leave for which defendant demanded medical support, he exceeded his absences allowed.  In other words, defendant may have told him not to return to work until he obtained the necessary medical support for his February absences, but because he did not obtain the necessary support for the February period, the April absences were not excused.  Thus, plaintiff's claim under the FMLA fails.

**Wrongful Termination Claim**

Plaintiff claims that he was wrongfully terminated because Brad Smith did not have the authority to fire him.  As set forth above, he testified that had Leonard Lowery been the one who told him he was terminated, the procedure would have been correct.  Plaintiff admits that Mr. Lowery contacted him by telephone the same day that Mr. Smith informed him that he was terminated.  He also admits that he refused to travel to defendant's facility because he knew Mr. Lowery was going to terminate him when he arrived.  Whether or not Mr. Smith had the "authority" to fire Mr. Smith is of little consequence.  According to plaintiff's argument, he could avoid being fired by not reporting to work when requested to do so by Mr. Lowery.  Nonetheless, when plaintiff failed to report as requested, Mr. Lowery sent a letter informing him that his employment had been

terminated.

Thus, assuming defendant had a policy prohibiting Brad Smith from informing plaintiff that his employment was terminated, plaintiff has failed to show he had the right to rely on such a policy. Assuming, *arguendo*, he did have a right to rely on the policy, Mr. Lowery would have informed him that very day that his employment was terminated, but for plaintiff's refusal to report to defendant's plant. And, Mr. Lowery sent a letter to plaintiff informing him that his employment was terminated. Accordingly, defendant's motion for summary judgment against plaintiff's claim for wrongful discharge should be granted.

For the foregoing reasons, it is recommended that the defendant's motion for summary judgment (Document # 122) be granted. If the district judge agrees with this recommendation, the remaining motions outstanding in this case should be deemed moot.


August 30, 2005                                              s/Thomas E. Rogers, III
Florence, South Carolina                              Thomas E. Rogers, III
                                                                    United States Magistrates Judge




**The parties' attention is directed to the important notice contained on the following page(s).**

### Notice of Right to File Objections to Magistrate Judge's "Report and Recommendation"
### &
### The Serious Consequences of a Failure to Do So

  The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within ten (10) days of the date of service. 28 U.S.C. § 636 and Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed. R. Civ. P. 6. A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. *See* Mathews v. Weber, 423 U.S. 261, 270-271 (1976); and Estrada v. Witkowski, 816 F. Supp. 408, 410, 1993 U.S.Dist. LEXIS® 3411 (D.S.C. 1993).

  During the ten-day period for filing objections, but not thereafter, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he or she wishes the United States District Judge to consider any objections. Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections. *See* Keeler v. Pea, 782 F. Supp. 42, 43-44, 1992 U.S.Dist. LEXIS® 8250 (D.S.C. 1992); and Oliverson v. West Valley City, 875 F. Supp. 1465, 1467, 1995 U.S.Dist. LEXIS® 776 (D.Utah 1995). Failure to file written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. *See* United States v. Schronce, 727 F.2d 91, 94 & n. 4 (4th Cir.), *cert. denied*, Schronce v. United States, 467 U.S. 1208 (1984); and Wright v. Collins, 766 F.2d 841, 845-847 & nn. 1-3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he or she did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. Howard v. Secretary of HHS, 932 F.2d 505, 508-509, 1991 U.S.App. LEXIS® 8487 (6th Cir. 1991). *See also* Praylow v. Martin, 761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009 (1985). In Howard, supra, the Court stated that general, non-specific objections are *not* sufficient:

> A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless. * * * This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. * * * We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.

*Accord* Lockert v. Faulkner, 843 F.2d 1015, 1017-1019 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. * * * A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.

*See also* Branch v. Martin, 886 F.2d 1043, 1046, 1989 U.S.App. LEXIS® 15,084 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and Goney v. Clark, 749 F.2d 5, 7 n. 1 (3rd Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review"). This notice, hereby, apprises the plaintiff of the consequences of a failure to file specific, written objections. *See* Wright v. Collins, supra; and Small v. Secretary of HHS, 892 F.2d 15, 16, 1989 U.S.App. LEXIS® 19,302 (2nd Cir. 1989). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections addressed as follows:

Larry W. Propes, Clerk
United States District Court
Post Office Box 2317
Florence, South Carolina 29503
